**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| SHONEY'S NORTH AMERICA CORP., a Georgia Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil No. 3:10-0894 Judge Trauger |
| GOLDMINE HOSPITALITY, LLC, a Florida Limited Liability Company, SOUTHERN HOSPITALITY SERVICES, LLC, a Florida Limited Liability Company, DIPANKAR BEN BANERJEE, a Florida resident, and MOUSHUMI BANERJEE, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF JUDGMENT**

The Plaintiff's Motion For Default Judgment Against Defendants Goldmine Hospitality, LLC, Southern Hospitality Services, LLC, Dipankar Ben Banerjee and Moushumi Banerjee (Docket No. 55) is **GRANTED**. The plaintiff will be awarded judgment for liquidated damages in the total amount of $397,703.88, reasonable attorney's fees and costs in the amount of $49,614.57, and post-judgment interest calculated from the date of entry of the Judgment pursuant to 28 U.S.C. § 1961. The analysis justifying the amount of the Judgment appears below.

**The Plaintiff is entitled to liquidated damages pursuant to each franchise agreement.**

The Plaintiff seeks liquidated damages pursuant to Section 16 of each of the four franchise agreements (Docket No. 1 Exs. 2, 4, 6, and 8) "calculated using thirty-nine four-week periods of information reflecting Southern Hospitality and Goldmine's payment of royalty and

1

production fund contributions for each restaurant, ending at the date of the termination of each respective franchise agreement." (Docket No. 56 at 6-7). This incorporates the definitions of royalty rate and production fund contributions set forth in Sections 7.A and 9.A respectively of each of those same agreements. (*Id*.). Liquidated damages are granted consistent with this formula. The amounts of liquidated damages relating to each agreement are listed in the paragraphs that follow with explanations where they differ from the amounts sought by the Plaintiff.

**Liquidated damages relating to the Alexandria Agreement.**

The Plaintiff is entitled to $92,780.72 in liquidated damages relating to the Alexandria Agreement (Docket No. 1 Ex. 6). The court has reduced the amount requested - $93,341.85 - by $561.13. (*See* Docket No. 56 at 11). Barry Frith's Declaration indicates that Exhibit B-1 (Docket No. 59 Ex. B at 1-7) contains charts showing "the thirty-nine four-week periods" used to make the Plaintiff's calculations for the Alexandria Agreement. (Docket No. 59 at 4). However, the charts include one five-week period running from November 26, 2007 through December 30, 2007 without explanation.[1] (Docket No. 59 Ex. B at 1, 4). Consequently the amount of royalty and production fund contributions for that one period has been reduced by 20% - $561.13 - to approximate a four-week period.

**Liquidated damages relating to the West Monroe Agreement.**

The Plaintiff is entitled to $104,808.74 in liquidated damages relating to the West Monroe Agreement (Docket No. 1 Ex. 8). The court has reduced the amount requested -

---

[1]There appear to be forty periods. However, the last period of 2006 is given as one week and the first period of 2007 is given as three, so the court has treated this as one four-week period. (*See* Docket No. 59 Ex. B at 1-7).

2

$112,233.66 - by $7,424.92. (*See* Docket No. 56 at 11). The Frith Declaration states that Exhibit B-2 (Docket No. 59 Ex. B at 8-11) contains charts showing "the thirty-nine four-week periods" used to make the Plaintiff's calculations for the West Monroe Agreement. (Docket No. 59 at 4-5). However, the charts include forty four-week periods and one five-week period without explanation. (*See* Docket No. 59 Ex. B at 8-11). The court has subtracted $6,766.34, the amount of royalty and production fund contributions for the first two periods - January 22, 2007 through February 18, 2007, and February 19, 2007 through March 18, 2007 - because the West Monroe Agreement provides damages will be calculated using the thirty-nine periods "immediately preceding termination." (*See* Docket No. 1 Ex. 8 at 32). Additionally, the amount of royalty and production fund contributions for the five-week period running from November 26, 2007 through December 30, 2007 has been reduced by 20% - $658.58 - to approximate a four-week period.

**Liquidated damages relating to the Natchitoches Agreement.**

The Plaintiff is entitled to $99,019.48 in liquidated damages relating to the Natchitoches Agreement (Docket No. 1 Ex. 4). The court has reduced the amount requested - $99,715.27 - by $695.79. (*See* Docket No. 56 at 11). The Frith Declaration states that Exhibit B-3 (Docket No. 59 Ex. B at 12-15) contains charts showing "the thirty-nine four-week periods" used to make the Plaintiff's calculations for the Natchitoches Agreement. (Docket No. 59 at 4-5). However, the charts include one five-week period running from November 26, 2007 through December 30, 2007 without explanation. (Docket No. 59 Ex. B at 12, 14). Consequently the amount of royalty and production funds contributions for that one period has been reduced by 20% - $695.79 - to approximate a four-week period.

**Liquidated damages relating to the Bossier City Agreement.**

The Plaintiff is entitled to $101,094.94 - the amount requested by the Plaintiff - in liquidated damages relating to the Bossier City Agreement. (*See* Docket No. 56 at 11).

**The Plaintiff is not entitled to pre-judgment interest pursuant to 28 U.S.C. § 1961.**

The Plaintiff is not entitled to pre-judgment interest pursuant to 28 U.S.C. § 1961 ("Section 1961") and has offered no other basis on which it might be awarded.[2] (*See* Docket No. 56 at 14-16). Section 1961(a) provides in pertinent part that "[s]uch interest shall be calculated from the *date of the entry of the judgment*, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." § 1961(a) (emphasis added). This statute governs the rate of *post-judgment interest* in civil cases decided in federal district courts. *See Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781, 792 (6th Cir. 2005). Consequently, the Plaintiff's request for prejudgment interest is denied.

**The Plaintiff is entitled to reasonable attorneys' fees and costs.**

The Plaintiff is entitled to $49,614.57 in attorneys' fees and costs in addition to the $4,000 already awarded in the Contempt Order (Docket No. 53 at 4). Section 18.F of each of the four franchise agreements (Docket No. 1 Exs. 2, 4, 6, and 8) provides that the prevailing party is entitled attorneys' fees and costs. The sum awarded is the amount billed to Troutman Sanders

---

[2]The Plaintiff in the "Factual and Procedural Background" portion of its Memorandum "seeks prejudgment interest for its liquidated damages at the statutory rate" without citing a particular statute; rather it cites to portions of the Complaint (Docket No. 1) dealing with neither liquidated damages nor pre-judgment interest. (*See* Docket No. 56 at 8). However, in the "Argument and Citation to Authorities" portion of its Memorandum, the Plaintiff cites, quotes in part, and analyzes Section 1961. (*Id*. at 14-16). Therefore, the court limits its analysis to Section 1961.

LLP - $40, 209.32 - and Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. - $13,405.25 - minus the $4,000 already awarded. (Docket No. 56 at 7-8). The Plaintiff has indicated that the reasonable fees and costs awarded by the court in its Contempt Order (Docket No. 53) are included in the amount billed by Troutman Sanders LLP. (Docket No. 56 at 8 n.4). The Declaration of Mark S. VanderBroek, Esq. is in agreement on this point. (Docket No. 57 at 4). However, the Plaintiff requested $57,244.75 in fees and costs in addition to the $4,000 already awarded. (Docket No. 55 at 3). The Plaintiff has not identified any other fees or costs. (*See* Docket No. 56 at 7-8). Consequently, the court denies the request for the additional $7,630.18 as no basis has been offered for recovery of this amount.

**28 U.S.C. § 1961 provides for post-judgment interest calculated from the date of the entry of the judgment.**

The Plaintiff is entitled to post-judgment interest pursuant to Section 1961. This interest is to run from the date of judgment rather than from the date of the order of default. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) (rejecting the argument that Section 1961 post-judgment interest ran from the date of the verdict rather than from the date of the entry of judgment). Applicable interest rates should be determined by the methodology set out in Section 1961(a) quoted *supra*.[3]

**The Plaintiff is entitled to a permanent injunction on the terms of the preliminary injunction.**

On October 6, 2010 a preliminary injunction (Docket No. 29) was entered against the Defendants. Three of the Defendants were held in civil contempt for violation of this injunction

---

[3] The Plaintiff describes Exhibit 1 of Plaintiff's Memorandum of Law as the weekly average required by Section 1961(a). (Docket No. 56 at 15). However, the first page of Exhibit 1 describes the frequency as "monthly." (Docket No. 56 Ex. 1 at 1).

5

on December 16, 2010. (Docket No. 53). The Plaintiff requests that the Defendants be enjoined from future unauthorized use of its marks. (Docket No. 56 at 12). The court will grant this relief and convert the preliminary injunction (Docket No. 29 at 3) into a permanent injunction.

It is so **ORDERED**.

ENTER this 20th day of January 2011.

                                            ALETA A. TRAUGER
                                            U.S. District Judge